## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, John Marquissee, being duly sworn, depose and state as follows:

### Affiant Background and Purpose of Application

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of eight electronic devices and one SD card—described below and in Attachment A—that are currently in law enforcement's possession in the District of Vermont and the seizure from those devices of the electronically stored information described in Attachment B.

2. The items to be searched are:

   a. A white Apple iPhone in evidence bag # A5659500 that belongs to Harvey HERNANDEZ-HERNANDEZ and that was found on his person;

   b. An Apple watch in evidence bag # A5659499 that belongs to Harvey HERNANDEZ-HERNANDEZ and that was found on his person;

   c. A SD card that was found in the navigation system for the vehicle HERNANDEZ-HERNANDEZ was driving during the human smuggling event;

   d. A black iPhone in evidence bag # A5659511 that belongs to Ernesto RAMIREZ-CORONA and that was found on his person;

   e. A blue Huawei smartphone in evidence bag # A5659515 that belongs to Andrey CASTILLO-PEREZ and that was found on her person;

   f. A silver Samsung smartphone in evidence bag # A5659513 that belongs to Karla ALCANTARA-GAMEZ and that was found in her personal property;

1

  g. A purple Motorola smartphone in evidence bag # A5659513 that belongs to Ibeth ACOSTA-LOPEZ and that was found on her person;

  h. A silver Huawei smartphone in evidence bag # A5659522 that belongs to Anahy MORA-HERNANDEZ and that was found on her person;

  i. A blue Addo android smartphone in evidence bag # A5659501 that belongs to Estrella MARIN-GONZALEZ and that was found on her person; and

  j. A blue OnePlus smartphone in evidence bag # A5659516 that belongs to Dulce SANCHEZ-MARTINEZ and that was located on her person (collectively, "the Devices").

3. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of seizing electronically stored data, particularly described in Attachment B, that would provide evidence of immigration offenses by the user(s) of the Devices, specifically human smuggling and illegal entry violations of Title 8, United States Code, Sections 1324 and 1325. The Devices are currently located in the evidence safe at the U.S. Border Patrol, Beecher Falls Border Patrol Station, 288 Vermont Route 114, Canaan, Vermont 05903. Based on my training and experience, the Devices have been stored in a manner such that the data on them would remain intact and in the same condition as they were at the time of their seizure.

4. This application is in relation to United States Border Patrol's encounter with Harvey HERNANDEZ-HERNANDEZ during an investigation of violations of 8 U.S.C. § 1324 on or about October 9, 2023. At that time, HERNANDEZ-HERNANDEZ was found on a remote private road near the international border between the United States and Canada waiting to meet up with his "friend." Shortly after encountering and arresting HERNANDEZ-HERNANDEZ,

Agents witnessed 7 subjects exit the woods and attempt to get into HERNANDEZ-HERNANDEZ's car.

5. I am a Border Patrol Agent (BPA) Intelligence (Intel) [BPA(I)] with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a U.S. Border Patrol Agent since November 2008. I am currently assigned as an Intelligence Agent, and I work at the Beecher Falls Border Patrol Station in Canaan, Vermont (VT). I received formal training to identify and investigate alien smuggling and narcotics smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico from November 2008 to February 2009 and through regular and recurring on-the-job training and annual Virtual Learning Center course certifications.

6. Based on my training and experience, I am aware that individuals working together to commit crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Swanton Sector generally and in the Beecher Falls Station's Area of Responsibility (AOR) specifically; given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

7. The information contained within this affidavit is based upon my training and experience, upon my own investigative efforts, and upon investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the

events described below. It is meant to set forth probable cause to believe that the violation occurred and does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

**Probable Cause**

8. On October 9, 2023, U.S. Border Patrol Agent (BPA) Jacob Conroy was patrolling near Gagne Road in Norton, Vermont in the Beecher Falls Station's AOR. Gagne Road is a predominantly a private east-west road that travels perpendicular within 2 miles to the international border between Canada and the United States. Gagne Road has limited public traffic and is mainly used by landowners who have access to the two locked gates located on the road. Recently, this area has been used by transnational organizations to smuggle contraband and humans into the United States illegally. As recently as August 13, 2023, law enforcement had interdicted a human-smuggling event where a transporter had driven a vehicle to the intersection on Gagne Road and Vermont Route 114 to pick up migrants who had just illegally entered the United States.

9. Based on my training and experience, I am familiar with the methods frequently employed by human smugglers. One method historically employed by human smugglers in the Swanton Sector is for the organizer to have the aliens to be smuggled into the United States transported from a major metropolitan area (such as Toronto or Montreal) to a location near the United States border with Canada. The migrants are then dropped off in a remote and largely unmonitored location along the border and directed to walk across the border and meet up with a waiting vehicle in the United States. The waiting driver will then transport them within the United States in furtherance of their illegal entry. The organizers frequently track the migrants'

4

progress via location sharing or GPS pin drops sent to and from phones carried by one or more of the migrants. The organizers then share that location information with the waiting drivers. Data reflecting those communications and location shares are frequently retained on the migrants' and drivers' phones, even if they attempt to delete the exchanged messages.

10. At approximately 2:31 AM, Swanton Sector Dispatch notified Agents of a vehicle traveling west along Gagne Road. At this time of day, usually no vehicles travel along Gagne Road. BPA Conroy responded to the area and encountered a black Ford Explorer bearing New York license plates HHS3080 parked on the side of Gagne Road near a turnaround and the locked access gates with its headlights off. BPA Conroy was able to observe one subject sitting in the driver's seat. BPA Conroy parked his U.S. Border Patrol vehicle alongside and approached the vehicle to conduct a consensual encounter. As BPA Conroy approached the passenger side of the vehicle, the driver (later identified as HERNANDEZ-HERNANDEZ) rolled down the passenger side window to speak with BPA Conroy. BPA Conroy identified himself as a U.S. Border Patrol Agent and asked HERNANDEZ-HERNANDEZ what he was doing in the area at this time of the day. HERNANDEZ-HERNANDEZ stated that he was trying to meet up with a friend and that his GPS sent him down Gagne Road. BPA Conroy proceeded to ask HERNANDEZ-HERNANDEZ for identification and question him to his immigration status in the United States. HERNANDEZ-HERNANDEZ provided BPA Conroy a New York driver's license in the name of Harvey Hernandez-Hernandez. He told BPA Conroy that he was in the United States illegally and that he is a citizen and national of Mexico. During the conversation between BPA Conroy and HERNANDEZ-HERNANDEZ, BPA Conroy noticed multiple calls and notifications come through on HERNANDEZ-HERNANDEZ's cellphone and watch. Believing that a human smuggling event was imminent, BPA Conroy arrested HERNANDEZ-

HERNANDEZ for not having immigration status in the United States and then traveled east, returning to the intersection of Vermont Route 114 and Gagne Road until other Agents responded.

11. Within minutes, BPA Stephen Lenhardt arrived and entered BPA Conroy's vehicle. BPAs Conroy and Lenhardt traveled back west along Gagne Road with the vehicle's lights off, using night vison goggles and an infrared light to navigate the road. As BPA Conroy approached the parked SUV that HERNANDEZ-HERNANDEZ was driving, BPA Conroy witnessed multiple subjects with backpacks exit the woods and attempt to enter HERNANDEZ-HERNANDEZ's vehicle. At that time, BPA Conroy activated his headlights and emergency equipment. As BPAs Conroy and Lenhardt exited BPA Conroy's vehicle, they identified themselves as U.S. Border Patrol Agents and quickly apprehended the seven subjects.

12. BPA Conroy questioned the seven subjects as to their immigration status in the United States. All subjects stated that they had entered the United States illegally and had no immigration status in the United States. The subjects were later identified as Ernesto RAMIREZ-CORONA (Country of Citizenship (COC): Mexico), Dulce Maria SANCHEZ-MARTINEZ (COC: Mexico), Anahy MORA-HERNADEZ (COC: Mexico), Estrella MARIN-GONZALEZ (COC: Mexico), Andrey CASTILLO-PEREZ (COC: Mexico), Karla ALCANTARA-GAMEZ (COC: Mexico), and Ibeth ACOSTA-LOPEZ (COC: Ecuador). The Devices were taken from the subjects as described in paragraph 2 at the time of their respective arrests.

13. While at the Beecher Falls Border Patrol Station, I interviewed Ernesto RAMIREZ-CORONA using a government-contracted interpretation company. During that interview, RAMIREZ-CORONA stated the guides told the group there was a black Ford Explorer waiting for them, to get into the vehicle, and the driver would take them to New York City.

**Conclusion and Request**

14. Based on the foregoing, I submit there is probable cause to believe that the Devices described in Attachment A will contain evidence of violations of 8 U.S.C. §§ 1324 and 1325 as described in Attachment B.

15. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this __18th__ day of October 2023.

          _Attested to by reliable electronic means_
          John Marquissee, Border Patrol Agent-Intelligence
          U.S. Border Patrol, Department of Homeland Security

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by reliable electronic means, namely a video call.

          Hon. Kevin J. Doyle
          United States Magistrate Judge